# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

MIGUEL A. TREJOS,

                    **Plaintiff,**

    **-vs-**                               **Case No.  6:07-cv-1100-Orl-28GJK**

COMMISSIONER OF SOCIAL SECURITY,

                    **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

      Plaintiff Miguel Trejos ["Trejos"] appeals to the district court from a final decision of the Commissioner of Social Security [the "Commissioner"] denying his application for disability insurance benefits and supplemental security income payments. *See* Doc. No. 1 ("Complaint"). For the reasons set forth below, it is recommended that the Commissioner's decision be **REVERSED and REMANDED**.

## I.     BACKGROUND

      Trejos was born April 21, 1962. R. 47. On his onset date of January 2, 2002, Trejos was 39 years of age. *Id.* He completed the 12th grade. R. 627. His past relevant work included his qualification as an expert in advanced infantry training in the United States Army from 1983 until 1989 (R. 77-84, 682), being honorably discharged with the rank of E-4, Sergeant (R. 189, 213, 627), and working as a truck driver and an injection mold operator and plastic parts assembler in a warehouse (R. 77 - 84).

According to the record, Trejos has been a regular patient at the Veteran's Affairs Outpatient Clinic ("VA") from September 1999 through January 2006.  Trejos has complained of and been treated for the following impairments:  carpal tunnel syndrome, severe obstructive sleep apnea, morbid obesity, osteoarthritis of the knees, degenerative disk disease, bipolar affective disorder (Tr. 121) and borderline personality disorder (R. 191).

### A.        Trejos' Back, Neck and Knee pain

On September 3, 1999, an x-ray of the bilateral shoulders showed narrowing of the right acromioclavicular joint (R. 207); an x-ray of the cervical spine showed minimal narrowing of the C5-6 interspace (R. 208).

On November 20, 2002, an x-ray of the bilateral knees showed transcompartmental degenerative changes worse in both medial compartments (R. 135, 297); an x-ray of the lumbrosacral spine showed multilevel degenerative disc disease worse at L4-5 and multilevel facet disease worse at L4-S1 (R. 297).  On September 26, 2003, an x-ray of Trejos' back showed mild herniation of disc material at L4-5 centrally and greater to the right of the midline and mild narrowing of the central canal at this level, degenerative changes at L5-S1 and mild bulging centrally and to the right of midline, and scattered degenerative changes. R. 377.  A September 26, 2003, x-ray of his cervical spine showed degenerative changes, mild to moderate narrowing of disk heights, osteophyte spurring at multiple levels, and narrowing of the neural foramen. R. 376.

On November 20, 2003, Trejos complained of chronic back and knee pain. R. 146.  He complained of pressure on and being unable to lock his left knee. R. 146.  On January 13, 2003, he reportedly fell on the floor, striking his left elbow, due to pain in his back and knees. R. 125.

2

He complained that his neck pain was worsening and that numbness in his lower back extended to down to his right knee. R. 125.  He reported that he could not walk more than two blocks without intense knee pain. R. 146.  On January 14, 2003, his gait was impaired; he ambulated with difficulty secondary to morbid obesity. R. 141.  On March 2, 2004, Dr. Tran stated that due to his morbid obesity, Trejos' employability would be decreased. R. 524.

**B.      Trejos's Sleep Apnea**

On October 18, 2002, Trejos complained of sleep disturbances, awakening multiple times each night, excessive daytime sleepiness, and a "choking" sensation. R. 152.  On March 3, 2004, Trejos underwent a split baseline and BIPAP tritation sleep test. R. 514.   Indications for the test were an evaluation of obstructive sleep apnea and a history of excessive daytime somnolence and snoring.  R. 514.  The test showed sleep efficiency of 81 percent. R. 514 - 515.

On December 1, 2002, a second sleep study resulted in a diagnosis of severe obstruction sleep apnea, suspected alveolar hypoventilation that may be related to severe obstructive sleep apnea or the patient's increased weight, and sleep-onset REM period possibly associated with this degree of sleep apnea; narcolepsy is a consideration. R. 608.

**C.      Trejos' Mental Health**

Trejos was psychiatrically hospitalized for depressive symptoms and suicidal thoughts in February 2002. R. 188.  On February 6, 2002, he was admitted to the VA hospital and he was discharged on February 13, 2002. R. 198 - 205.   His discharge diagnoses were adjustment disorder with depressive and anxious features, and history of major depressive disorder, recurrent. R. 198.  His treating physician, Raul Nodal, M.D., Staff Psychiatrist, determined that Trejos' GAF score at time of admission was 45, and his GAF score at time of discharge was 55.

R. 198.

On February 25, 2002, Trejos was psychiatrically admitted again and discharged on March 13, 2002. R. 184-186.  On February 25, 2002, Trejos reported that he was depressed, and expressed a decreased mood, difficulty maintaining sleep, concentration problems, crying spells, and feelings of guilt and worthlessness, withdrawal and ongoing thoughts in his mind. R. 188. His diagnoses were adjustment disorder with depressive and anxious features and bipolar disorder by history with borderline personality traits. R. 191.  His treating physicians, Heidi R. Bruty, Resident Physician, and Raul Nodal, M.D., Staff Psychiatrist, determined that his GAF score was 40. R. 180, 184, 191.

On October 22, 2002, Trejos was diagnosed with bipolar affective disorder. R. 151. Treatment notes indicated that he discussed the fear he experienced when he went around people. He reported that he was tired all the time with no energy or desire to do much and that he had trouble with his neighbors who accused him of situations of which he had no memory.  R. 151. He experienced mood swings, and making decisions was a major chore for him. R. 151.  The diagnosis was bipolar affective disorder, and his treating Staff Psychiatrist, Karl W. Isaacs, M.D. determined that his GAF score was 40.  R. 151.

On February 25, 2004, Trejos' diagnosis was bipolar affective disorder. R. 519.  He reported that he was more aggressive, argumentative and intolerant of people, he experienced thoughts in his head telling him to hurt people, and he had trouble focusing and concentrating because of thoughts going through his head, and auditory hallucinations. *Id.*  Dr. Isaacs determined that his GAF score was 40.  *Id.*  On June 14, 2004, Trejos was denied gastric bypass surgery due to mental instability.  R. 16, R. 471-72.   On June 14, 2004 and April 19, 2005,

Trejos received the same diagnosis as having bipolar affective disorder and a GAF score of 40. R. 471-72; R. 579 - 581.

### D.     The Administrative Proceedings

On April 23, 2002, Trejos filed applications for for a period of disability, disability insurance benefits, and supplemental security income.  R. 47-49.  On November 17, 2003, the Honorable Robert Droker, Administrative Law Judge ("ALJ Droker") held a hearing on Trejos' disability claim.  R. 671-703.  Attorney Ron Pekoe represented Trejos at the hearing.  R. 671. Trejos and Joe Iagusa, vocational expert, were the only people to testify.  *Id.*  On February 10, 2004, ALJ Droker issued a decision denying Trejos' application for disability. R. 14, 333.[1]  On September 4, 2005, the Appeals Council vacated ALJ Droker's decision and remanded the case for further proceedings. R. 333-34.

On March 21, 2006, the Honorable Robert Marsenhowski, Administrative Law Judge ("ALJ") held a hearing on Trejos' disability claim.  R. 704-44.   R. 704.   Attorney Greg Maaswinkel represented Trejos at the hearing. Trejos and vocational expert Jane Beougher ("VE") were the only people to testify. *Id.*  On April 10, 2006, the ALJ issued a decision that Trejos was not disabled finding the following:

1.     The medical evidence indicates that Trejos has the following severe impairments:  bipolar disorder, sleep apnea and obesity.

2.     Trejos' allegations regarding his limitations are not totally credible.

3.     Trejos has the RFC to perform a significant range of sedentary work with limitations to understand, remember and carry out simple instructions, perform simple, routine tasks, with minimal interaction with others and need to ambulate with a cane.  Trejos has mild functional limitations in activities of daily living, moderate limitations in social functioning, mild

---

[1] ALJ Droker's decision is not in the record.

limitations in concentration, persistence or page and 1 to 2 episodes of decompensation due to Bipolar Disorder.

4.      There are a significant number of jobs in the national economy that Trejos can perform.

R. 14-21.

Trejos requested review by the Appeals Council, and on May 22, 2007, the Appeals Council denied review. R. 7-9.  On June 28, 2007, Trejos timely appealed the Appeals Council's decision to the United States District Court.  Doc. No. 1.  On November 1, 2007, Trejos filed a memorandum of law in support of his appeal.  Doc. No. 13.  On January 30, 2008, the Commissioner filed a memorandum in support of his decision that Trejos was not disabled.  Doc. No. 17.  The appeal is ripe for determination.

## II.    <u>THE PARTIES' POSITIONS</u>

Trejos assigns three errors to the Commissioner's decision: 1) The ALJ applied incorrect legal standards in failing to consider Trejos' GAF scores or borderline personality disorder as required by 20 C.F.R. § 404.1520, 20 C.F.R. § 404.1520a and *Walker v. Bowen,* 826 F.2d 996, 1001 (11th Cir. 1987); 2) the ALJ failed to state with particularity the weight that he gave different medical opinions and the reasons therefore; and 3) the Commissioner applied an incorrect legal standard in finding that Trejos' testimony was credible only to the degree that it is supported by the medical evidence.

The Commissioner argues that substantial evidence supports his decision to deny Black his claim for disability benefits.  The Commissioner states that the ALJ's finding at step two of the sequential evaluation process was correct.  He also argues that the ALJ correctly evaluated the objective medical evidence in the record.

6

III.     **LEGAL STANDARDS**

A.       **THE ALJ'S FIVE-STEP DISABILITY ANALYSIS**

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a).   The steps are followed in order.   If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 CFR §§ 404.1520(b), 416.920(b).   Substantial gainful activity ("SGA") is defined as work activity that is both substantial and gainful.   "Substantial work activity" is work activity that involves performing significant physical or mental activities. 20 CFR §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually performed for pay or profit, whether or not a profit is realized. 20 CFR §§ 404.1572(b), 416.972(b).   Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA. 20 CFR §§ 404.1574, 404.1575, 416.974, 416.975.   If an individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR §§ 404.1520(c), 416.920(c).   An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.   An impairment or combination of impairments is "not severe" when medical or other

7

evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 CFR §§ 404.1521, 416.921.

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *See Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987); *Davis*, 985 F.2d at 534. A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly. *Vega v. Comm'r*, 265 F.2d 1214, 1219 (11th Cir. 2001). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, it must be determined whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listing(s)"). 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the claimant's impairment or combination of impairments

meets or medically equals the criteria of a Listing and meets the duration requirement (20 CFR §§ 404.1509, 416.909), the claimant is disabled.  If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the claimant's RFC. 20 CFR §§ 404.1520(e), 416.920(e).  An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments.  In making this finding, the ALJ must also consider all of the claimant's impairments, including those that may not be severe. 20 CFR §§ 404.1520(e), 404.1545, 416.920(e), 416.945.

Next, the ALJ must determine step four, whether the claimant has the RFC to perform the requirements of his past relevant work. 20 CFR §§ 404.1520(f), 416.920(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, and pull.  *See* 20 C.F.R. § 404.1545(b).  The claimant has the burden of proving the existence of a disability as defined by the Social Security Act.  *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  If the claimant is unable to establish an impairment that meets the Listings, the claimant must prove an inability to perform the claimant's past relevant work.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established.  In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA. 20 CFR §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  If the claimant has the RFC to do his past relevant work, the claimant is

not disabled.  If the claimant is unable to do any past relevant work, the analysis proceeds to the fifth and final step.

At the last step of the sequential evaluation process (20 CFR §§ 404.1520(g), 416.920(g)), the ALJ must determine whether the claimant is able to do any other work considering his RFC, age, education and work experience.  In determining the physical exertional requirements of work available in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy.  20 C.F.R. § 404.1567.  If the claimant is able to do other work, he is not disabled.  If the claimant is not able to do other work and his impairment meets the duration requirement, he is disabled.  Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration.  In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the RFC, age, education and work experience. 20 CFR §§ 404.1512(g), 404.1560(c), 416.912(g), 416.960(c).

### B.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838

(11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord*, *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984). A claimant may

be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

The district court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089-92, 1095, 1098 (11th Cir. 1996). To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord*, *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[2]  In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new

---

[2] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation).  After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish:  1) that there is new, non-cumulative evidence; 2) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3) there is good cause for failure to submit the evidence at the administrative level. *See Jackson*, 99 F.3d at 1090-92; *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir. 1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *Keeton v. Dept. of Health & Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994).  A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. *Jackson*, 99 F.3d at 1095.[3]

## IV.   ANALYSIS OF ALLEGED ERRORS

### A.   Whether the ALJ Applied Incorrect Legal Standards in Failing to Consider Trejos' GAF Scores or Borderline Personality Disorder

Trejos contends that the ALJ applied incorrect legal standards in failing to consider his GAF scores and borderline personality disorder as required by 20 C.F.R. § 404.1520, 20 C.F.R. § 404.1520a and *Walker v. Brown*, 826 F.2d 996, 1001 (11th Cir. 1987).  Doc. No. 13 at 8.  Trejos points out that a GAF score between 31 and 40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. *Id.*[4]  Trejos argues that his GAF scores significantly limit his ability to perform basic work activities. *Id.*

---

[3] With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact. *Id.*  The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. *Id.*

[4] DSM-IV-TR, 4th ed. (New York: American Psychiatric Association 2000) 32, 34.

Trejos cites *McCloud v. Barnhart,* 166 Fed.Appx. 410 (11th Cir. 2006) for the proposition that the Eleventh Circuit required a remand because the ALJ did not consider a GAF score.  Doc. No. 13 at 10; *McCloud,* 166 Fed.Appx. 410.  In *McCloud*, the Court remanded the case, in part, based on the fact the record was unclear what weight the administrative law judge had given the GAF score of 45.  In so doing, the Court rejected the Commissioner's argument that any such error was harmless. *Id.* at 418.[5]

Trejos' also argues that borderline personality disorder significantly limits his ability to perform basic work activities. Doc. No. 13 at 11.[6]  Trejos points out that borderline personality disorder is a pattern of instability in interpersonal relationships, self-image and affects, and marked impulsivity (DSM-IV-TR at 685) and is a serious mental illness.  *Id.*  Trejos maintains that people suffering from borderline personality disorder often need extensive mental health services.  *Id.*[7]  Trejos' argues that his borderline personality disorder significantly limits his ability to perform basic work activities. *Id.*[8]

The Commissioner argues that the ALJ's application of the two-step sequential evaluation process was correct.  Doc. No. 17 at 5.  The Commissioner states that Trejos failed to show that his mental condition caused further limitations that those provided by the ALJ. *Id.* at 6. Furthermore, the Commissioner maintains that Trejos' diagnosis of borderline personality

---

[5] In *McCloud*, the administrative law judge found the claimant's claim failed at step two of the sequential process. *Id.* at 415.

[6] See Michael H. Stone, M.D., "The Relationship Between Borderline Personality Disorder and Bipolar Disorder," The American Journal of Psychiatry, (http://ajp.psychiatryonline.org/cgi/content/full/163/7/1126).

[7] National Institute of Mental Health, Borderline Personality Disorder, (www.nimh.nih.gov/health/publica-ations/borderline-personality-disorder.shtml).

[8] See Michael H. Stone, M.D., "The Relationship Between Borderline Personality Disorder and Bipolar Disorder," The American Journal of Psychiatry, (http://ajp.psychiatryonline.org/cgi/content/full/163/7/1126).

disorder would not establish that his condition significantly limits his ability to work to a greater degree than already determined by the ALJ.   *Id.* at 5-6.   The Commissioner provides case law that indicates the finding of any severe impairment is sufficient to satisfy the requirement of step two. *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) ("the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two").   Doc. No. 17 at 5.   Thus, the Commissioner maintains that a finding a borderline personality disorder would essentially serve no purpose because it would not change the ALJ's findings under step two of his analysis and would not alter the ALJ's ultimate decision.   *Id.*

Similarly, the Commissioner also argues Trejos' GAF scores did not establish that he had any work-related limitations greater than the limitations found by the ALJ.   *Id.* at 6.   The Commissioner states that the ALJ found Trejos was limited to understanding, remembering, and carrying out simple instructions and performing simple, routine tasks, with minimal interaction with others, and Trejos failed to show that his mental condition caused additional limitations on his ability to work.   *Id.* Accordingly, Commissioner argues that substantial evidence supports the ALJ's evaluation of Trejos' impairments at step two of the sequential evaluation process.   *Id.*

At step two of the sequential evaluation process the ALJ is required to determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe".   20 C.F.R. § 404.1520(c).   An impairment or a combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1521.   In addition, when

15

there is evidence in the record of a mental impairment, 20 C.F.R. § 404.1520a requires the ALJ

to evaluate the pertinent medical signs and findings to determine if a claimant has a medically-

determined mental impairment, rate the degree of functional limitation resulting from the

impairment and determine the severity of the mental impairment. 20 C.F.R. § 404.152a(b)-(d).

The ALJ must consider all impairments, both singly and in combination, in a disability

evaluation. *Hill v. Barnhart,* No. 1:06-cv-0133-BBM-RGV, 2007 WL 438161 at *11 (N.D. Ga.

Jan. 16, 2007). The Commissioner proposes that the ALJ's consideration of Trejos' impairments

only affects step two of the sequential analysis. However, taking into account Trejos' GAF score

and the diagnosis of borderline personality disorder may alter the ALJ's ultimate RFC

assessment and whether Black can perform other work. Thus, the ALJ's failure to include these

two diagnoses is not harmless error. The ALJ is required to make specific and well-articulated

findings as to the effect of the <u>combination of impairments</u> and to decide whether the <u>combined</u>

<u>impairments</u> are disabling. *Walker v. Bowen,* 826 F.2d 996, 1001 (11th Cir. 1987) (emphasis

added). Considering the aforementioned arguments and law, the Court is unable to determine

whether the ALJ sufficiently considered Trejos' combination of impairments in light of his

failure to consider the GAF score and diagnosis of borderline personality disorder. Accordingly,

it is recommended that the ALJ's decision be reversed and remanded for further proceedings.

**B.      Whether the ALJ Failed to State With Particularity the Weight That He
         Gave Different Medical Opinions and the Reasons Therefor**

Trejos maintains that pursuant to *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987),

the ALJ erred by failing to specifically weigh the different medical opinions. Doc. No. 13 at 12.

Trejos argues that the ALJ did not state specifically how much weight, if any, he accorded Drs.

Tran, Nodal and Isaac. Doc. No. 13 at 12-3. The Commissioner states that the ALJ sufficiently

evaluated the objective evidence of the record. Doc. No. 14 at 7.   The Commissioner maintains that none of the specified doctors provided an opinion as to Trejos' ability to perform work activity. Doc. No. 17 at 7.   Nonetheless, the Commissioner states that the ALJ properly considered their medical records along with the record of the other medical sources assessing Trejos' claim. *Id.*

Absent the existence of "good cause" to the contrary, the ALJ must give substantial weight to the opinion, diagnosis and medical evidence of a treating physician. *See MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Lewis v. Callahan*, 125 F.3d 1436, 1439 - 1441 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); *Sabo v. Comm'r of Social Security*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d).   If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).

The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).   Similarly, the ALJ may reject any medical opinion if the evidence supports a contrary finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1986).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075

17

(11th Cir. 1986); *see also, Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).

Pursuant to *Sharfarz*, the ALJ must state with particularity the weight given different medical opinions and the reasons therefor, and the failure to do so is reversible error.  *Sharfarz*, 825 F.2d at 279.  Without the ALJ making the necessary findings, it is impossible for a reviewing court to determine whether the ultimate decision is supported by substantial evidence. *Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985).

Initially, the Court points out that the ALJ did not mention Dr. Nodal or Dr. Isaac throughout his opinion.  However, the ALJ does indicate that Trejos was diagnosed with Bipolar Affective Disorder, presumably addressing Dr. Isaac's opinion. R. 16.  In regard to Dr. Tran, the record reflects that on March 2, 2004, Dr. Tran stated the following:

> [Trejos] will be limited in the type of job that he would be able to perform esp[ecially] due to his morbid obesity.  Therefore, his employability would be decreased as a result.

R. 524.  Thus, the Commissioner's argument that none of the specified doctors opined as to Trejos' ability to perform work is inaccurate.  The ALJ failed to state with particularity the weight given different medical opinions and the reasons therefor.  *Sharfarz*, 825 F.2d at 279. The Court is unable to determine whether the ALJ considered the record in its entirety in formulating his decision.  His failure to comply with the Eleventh Circuit mandate is reversible error.  Accordingly, it is recommended that the ALJ's decision be reversed and remanded for

further consideration.

C.     **Whether the Commissioner Applied an Incorrect Legal Standard in Finding that Trejos' Testimony Was Credible Only to the Degree That It Is Supported By the Medical Evidence.**

Trejos argues that the ALJ applied an incorrect legal standard in finding that Trejos' testimony was credible only to the degree that it supported the medical evidence.  Doc. No. 13 at 14.  The ALJ found "based on the facts, the undersigned finds the claimant's testimony is credible to the degree that it is supported by the medical evidence." R. 19.  Trejos argues that the ALJ's actions fall within the confines set forth in *Geiger v. Apfel,* No. 6:99-cv-0012-ORL-GKS-DAB, 2000 WL 381920 (M.D. Fla. Feb. 9, 2000).  Doc. No. 13 at 14.  Trejos states that the ALJ in *Geiger* rejected the claimant's complaints of pain, stating that his "complaints suggest a greater severity of impairments that can be shown by the medical evidence alone."  *Id.* at 7.  The District Court found that in so holding, the ALJ misapplied the Eleventh Circuit pain standard. *Id.*  Trejos maintains that the same error occurred in the present case, and the decision should be reversed because the ALJ did not apply the correct legal standard, which requires a determination of whether the medically-diagnosed impairment could reasonably be expected to cause the pain.  *Foote v. Chater,* 67 F3d. 1553, 1560 (11th Cir. 1995).

The pain standard requires either objective medical evidence confirming the severity of the alleged pain arising from that condition or that the objectively determined medical condition is of such severity that it can reasonably be expected to cause the pain.  *Foote*, 67 F3d. at 1560.

In the instant case, Trejos states that the ALJ never applied this standard set forth in *Foote*.  Rather, he maintains that the ALJ required objective proof of the pain itself.  This is an incorrect legal standard.  *See Elam v. Railroad Retirement Board,* 921 F.2d 1210, 1211 (11th Cir.

19

1989).

The Commissioner argues that the ALJ was aware of the Eleventh Circuit pain standard and cited the relevant regulations and rulings. Doc No. 17 at 11; R. 17.  *See Wilson*, 284 F.3d at 1125-26.  The Commissioner states that the ALJ also provided ample reasons for finding Trejos' allegations not totally credible. *Id.*; R. 19.  The Commissioner maintains that if the ALJ did not believe Trejos had an impairment capable of causing pain, the ALJ never would have considered the credibility of his complaints related to his impairments.  *See Wilson*, 284 F.3d at 1225-26; *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991); 20 C.F.R. §§ 404.1529, 416.929.  The Commissioner states that the ALJ's decision sufficiently addressed the issue of the credibility of Trejos' allegations and substantial evidence supports the ALJ's findings.  Doc. No. 17 at 11.

In this circuit, subjective complaints such as pain, fatigue or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms.  By this standard, there must be evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (*citing Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)).

A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability.  *Foote*, 67 F.3d at 1561.  Where an ALJ decides not to credit a claimant's testimony about [pain], the ALJ must articulate specific and adequate reasons for doing so or the record must be obvious as to the credibility finding.  *Id.*

20

at 1561-62.   A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Id.* at 1562.   The failure of the ALJ to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.   *Foote*, 67 F.3d at 1562.   The lack of a sufficiently explicit credibility finding may give grounds for a remand if the credibility is critical to the outcome of the case.   *Id.*   Thus, where credibility is a determinative factor, the ALJ must explicitly discredit the testimony or the implication must be so clear as to amount to a specific credibility finding.   *Id.*

In his decision, the ALJ specifically addressed his obligation "to consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirement of 20 C.F.R. §§ 1529 and  416.929, and Social Security Ruling 96-7p." R. 17.   The ALJ then proceeded to verify his decision not to credit Trejos' testimony due to various reasons, including:  1) Trejos tried to look for a job the previous year; 2) Trejos reported that aspirin controlled his headaches; 3) Trejos stated that he had back pain all of his life; and 4) Trejos was given conservative treatment. R. 19.  This list is not exhaustive of the ALJ's findings.   Accordingly, he specifically articulated reasons for discrediting Trejos' testimony.   Therefore, it is recommended that the ALJ's decision not be reversed on the basis of Trejos' third assignment of error.

## V.    <u>CONCLUSION</u>

For the reasons stated above, it is recommended that the Commissioner's decision be **REVERSED and REMANDED**.

---

[3]   In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the United States Court of Appeals for the Eleventh Circuit, adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Failure to file written objections to the proposed findings and recommendations contained in this report within eleven (11) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on August 29, 2008.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:

The Honorable John Antoon II
United States District Judge

Richard A. Culbertson
Law Office of Richard A. Culbertson
Suite E
3222 Corrine Dr.
Orlando, Florida        32803

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Nadine DeLuca Elder, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia        30303-8920

The Honorable Henry J. Snavely
Administrative Law Judge
c/o Social Security Administration
Office of Hearings and Appeals
Suite 300
3505 Lake Lynda Drive
Orlando, Florida        32817